James P. Keenley (State Bar No. 253106)
Brian H. Kim (State Bar No. 215492)
BOLT KEENLEY KIM LLP
1010 Grayson Street, Suite Three
Berkeley, California 94710
Phone: (510) 225-0696
Fax: (510) 225-1095

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| Elise DRAGU | Case No.: 14-cv-04268-RS |
| Plaintiff, | **COMPLAINT (ERISA)** |
| v. | |
| Motion Picture Industry Health Plan for Active Participants. | |
| Defendant. | |

## **INTRODUCTION**

1. On August 20, 2012 Plaintiff Elise Dragu suffered severe traumatic injuries after falling into a rocky creek while hiking. Plaintiff required numerous medical services as a result of her injuries, including surgical reconstruction of her jaw and teeth, including the installation of prosthetic teeth to replace numerous shattered teeth. This case challenges Defendant Motion Picture Industry Health Plan for Active Participants' (the "Plan") denial of benefits due under the terms of the Plan for care related to Plaintiff's need for surgical reconstruction of her jaw and teeth, including the installation of prosthetic teeth to replace numerous shattered teeth.

## JURISDICTION

2. Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

## VENUE

3. Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ERISA-governed plan at issue was administered in part in this District and can be found in this District.

## INTRADISTRICT ASSIGNMENT

4. This case should be assigned to the San Francisco / Oakland Division because Defendant may be found within this division.

## PARTIES

5. At all relevant times, Plaintiff was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.

6. At all relevant times, Defendant Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

## FACTS

7. On August 20, 2012 Plaintiff suffered traumatic injuries as a result of a fall sustained while hiking.

8. Plaintiff's injuries included, but were not limited to, multiple major fractures, shattered teeth, ripped gums, a broken jaw, and a severe laceration to her chin.

9. Plaintiff's oral injuries required extensive surgical reconstruction services, including bone grafts and the installation of prosthetic teeth to replace Plaintiff's shattered teeth.

10. Plaintiff's prosthetic teeth were "medically necessary" "covered services" within

the meaning of the Plan.

11. Plaintiff's prosthetic teeth consisted of four major components that were accomplished across multiple procedures:  1) bone grafts in her jaw; 2) artificial dental fixtures implanted into the surgically repaired bone which, through a process known as osseointegration, formed an intimate bond with the structure of the bone; 3) once the fixtures osseointegrated, abutments were installed on top of the fixtures for the purpose of linking the fixture to a crown; 4) once the abutments were properly installed crowns, which form the visible portion of a prosthetic tooth, were installed on top of the abutments.

12. On February 22, 2013, Plaintiff sought preauthorization from the Plan for installation of her medically necessary prosthetic teeth.

13. Plaintiff was verbally informed by Plan personnel that preauthorization was a "mere formality" and "imminent."

14. Despite the Plan personnel's representations, the preauthorization was repeatedly delayed.  Plaintiff elected to undergo the procedures to have her prosthetic teeth installed before preauthorization was granted or denied because the delay in obtaining prosthetic teeth was a source of significant pain and discomfort that was causing permanent physiological harm: Plaintiff was unable to eat or speak normally without the prosthetic teeth, and she was experiencing progressive and irreversible bone and gum loss without the prosthetic teeth.

15. On September 13, 2013, Plaintiff underwent a procedure to install the fixtures. The fixtures are a prosthetic tooth root.  At that time the Plan still had not rendered a decision on her request for pre-authorization.

16. On October 1, 2013, the Plan adopted a new SPD which contained new language regarding dental implants.  The SPD in effect prior to this change had been in effect since July 1, 2007.

17. By letter dated November 12, 2013, C.H. Armstrong III, M.D., acting on behalf of the Plan, denied Plaintiff's preauthorization request for "Placement of Implants."  The November 12, 2013, letter cited as the sole reason for denying Plaintiff's claim that "Dental services are not

covered under the Plan." The November 12, 2013 letter did not specify what governing plan documents were consulted to determine that "Dental services are not covered under the Plan." A true and correct copy of the November 12, 2013 letter is attached hereto as Exhibit 1.

18. Dr. Armstrong's representation on behalf of the Plan that "Dental services are not covered under the Plan" was materially false at the time it was made. As explained below, the Plan, regardless of which SPD is applied, was a comprehensive medical and dental benefit plan that did not exclude coverage for "dental services" generally, which in fact specifically provided coverage for installation of any medically necessary prosthesis and, in the case of the 2013 SPD, for installation of dental implants in the case of trauma specifically. Dr. Armstrong, as the Plan's medical director, knew or should have known about these aspects of the Plan because it is clearly set forth in the governing Plan instruments and the dental implant terms of the 2013 SPD are one of a small number of changes that went into effect just prior to his November 12, 2013 letter. Dr. Armstrong's denial of Plaintiff's claim reflected in the November 12, 2013 letter, was thus wrongful both in terms of which instruments governed the claim and what terms those instruments contained, and thus it was an abuse of discretion.

19. The November 12, 2013 letter was an adverse benefit determination within the meaning of section 503 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1133, and the Secretary of Labor's regulations thereunder at 29 C.F.R. § 2560.503-1(m)(4) because it was a "denial" and a "failure to provide or make payment of" a "benefit."

20. The November 12, 2013 adverse benefit determination did not comply with ERISA section 503 and the Secretary of Labor's regulations thereunder at 29 C.F.R. § 2560.503-1(g), because it did not a) inform Plaintiff of her right to obtain a full and fair review of the adverse benefit determination; b) provide a description of the time limits applicable to the Plan's review procedures; c) inform Plaintiff of her right to obtain documents relied on or generated during the course of the adverse benefit determination; or d) include a statement of Plaintiff's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

21. Notwithstanding the Plan's flagrant failure to comply with federal law governing ERISA benefit claims administration, on January 17, 2014, Plaintiff submitted a timely appeal of the November 12, 2103 adverse benefit determination. A true and correct copy of this appeal is attached hereto as Exhibit 2.

22. In her appeal, Plaintiff quoted language from the Plan's "Summary Plan Description" ("SPD") effective as of October 1, 2013 that showed that Dr. Armstrong's representation that the Plan did not cover dental services was false and directly contradicted by the October 1, 2013 SPD. The specific Plan terms are addressed in detail below.

23. Plaintiff's appeal was considered by a committee called the "Benefits/Appeals Committee."

24. Dr. Armstrong, acting on behalf of the Plan and the Benefits/Appeals Committee, sent a letter dated March 25, 2014, notifying Plaintiff that her appeal was denied. A copy of the March 25, 2014 letter is attached hereto as Exhibit 3.

25. The Benefits/Appeals Committee's sole explanation of its denial of Plaintiff's appeal is as follows:

   a. "The determination of the Committee was that per the Active MPI Health Plan Summary Plan Description, October 2013 – page 57, 'Prosthetic rehabilitation of dental implants including abutments and crowns are not covered under the medical benefit.'"

26. The March 25, 2014 letter constitutes an adverse benefit determination within the meaning of ERISA and the Secretary of Labor's regulations thereunder.

27. The Benefits/Appeals Committee's adverse benefit determination did not explain why it was applying the October 2013 SPD to Plaintiff's claim, even though her claim arose due to an injury sustained on August 20, 2012, her preauthorization request for this procedure was presented February 22, 2013, and the first part of the procedure was performed on September 13, 2013.

28. The Benefits/Appeals Committee's adverse benefit determination did not provide

1  any explanation of why the services sought by Plaintiff constituted "Prosthetic rehabilitation of
2  dental implants including abutments and crowns."

29.   The March 25, 2014 adverse benefit determination was issued 67 days following Plaintiff's appeal, which violates the 60 day deadline required by the Secretary of Labor's regulations thereunder at 29 C.F.R. § 2560.503-1(i), and at no point prior to the March 25, 2014 letter did the Plan administrator provide any notice of any special circumstances requiring additional time beyond the 60 day deadline.

30.   Once her dental fixtures had osseointegrated with her bone and bone grafts, Plaintiff underwent a procedure to install abutments and crowns on top of the fixtures and to thereby complete the installation of her prosthetic teeth.

31.   Although the March 25, 2014, letter states that Plaintiff's appeal "was denied" and does not indicate that any portion of her appeal was granted, the Plan did in fact reverse itself as to part of the initial November 12, 2013 adverse benefit determination: the Plan paid for 50% of the services performed by an oral surgeon.

32.   On information and belief Plaintiff understands that the basis of this determination was the Plan's restriction on benefits payable to "out-of-network" providers.

33.   Plaintiff was not aware of the Plan's decision to apply an out-of-network reimbursement rate to the work performed by her oral surgeon at the time of her January 17, 2014 appeal because the Plan's initial decision was to deny all coverage.  Plaintiff had no opportunity to appeal the out-of-network determination because the Plan did not provide her with notice that she could appeal, and stated in its March 25, 2014 letter that its review was "final and binding on all parties" and stated that her only further recourse was to file a lawsuit under section 502(a) of ERISA.

34.   At the time Plaintiff suffered her injuries, the Summary Plan Description in effect for the Plan had an effective date of July 1, 2007.  A true and correct copy of this SPD is attached hereto as Exhibit 4 and it is referred to herein as the 2007 SPD.

35.   The 2007 SPD, which was in effect at the time Plaintiff's oral surgeon performed

his work, states as follows: "Please keep in mind that there will be occasions when, while being treated by a medical group doctor, you may need the services of a specialist not available in the network. If you choose to see a specialist outside the network, the charge from these outside doctors will be paid at the rate of 70% of the allowable (90% in the case of a Blue Shield Preferred Provider.)"

36. On the basis of the term quoted in the above paragraph Plaintiff contends that the decision to compensate her oral surgeon at 50% of the allowable charge was wrongful and an abuse of discretion. Plaintiff's oral surgeon should have been compensated at a rate equal to 70% or 90% of the allowable charge.

37. The 2007 SPD contains the governing terms of the medical benefit programs and dental benefit programs that were provided by the Plan at the time of Plaintiff's original injury and original installation of dental fixtures.

38. As a result of the Plan's denial of her claim, Plaintiff has incurred substantial out of pocket expenses to pay for medical treatment that is covered under the terms of the Plan.

39. Under the terms of the Plan set forth in the 2007 SPD, participants, including Plaintiff, were required to choose between one of four medical benefit options and one of two dental benefit options.

40. At all relevant times, Plaintiff was enrolled in the "Motion Picture Industry Health Plan/BlueShield" medical benefit option and the "Delta Dental PPO Dental Plan" dental benefit option.

41. The 2007 SPD, for the medical benefit option in which Plaintiff was enrolled, states that it covers "reasonable and necessary medical services in connection with the diagnosis and treatment of any non-industrial illness or injury." Exh. 4 at 38.

42. The 2007 SPD states that "In order for a service to be covered, it must be a service for which the Plan has established a benefit and the service must be medically necessary and reasonable." Exh. 4 at 38.

43. The 2007 SPD defines "Medically Necessary" as "procedures, treatments,

supplies, devices, equipment, facilities or drugs (all services) that a medical practitioner, exercising clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating and illness, injury or disease or its symptoms, and that are: In accordance with generally accepted standards of medical practice; and Clinically appropriate in terms of type, frequency, extent, site and duration and considered effective for the patient's illness, injury or disease; and Not primarily for the convenience of the patient, physician or other health care provider; and Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment that patient's illness, injury or disease." Exh. 4 at 38.

44.  Plaintiff's prosthetic teeth and all services and equipment necessary to install them are "medically necessary" under this definition. At no time as the Plan disputed that Plaintiff's prosthetic teeth were medically necessary.

45.  Installation of prosthetic teeth was also a "service for which the Plan has established a benefit" at the time of Plaintiff's injury, at the time of her request for preauthorization, and when the services necessary to install the teeth were rendered. Specifically, the 2007 SPD explicitly provides that "Prostheses . . . are covered under Durable Medical Equipment" Plaintiff's prosthetic teeth were "Prostheses" within the meaning of this term and therefore a covered service.

46.  The 2007 SPD also established a benefit for "reconstructive/cosmetic surgery" in the case of "accidental injury." Repair of Plaintiff's jaw and installation of dental implants was "reconstructive/cosmetic surgery" within the meaning of this Plan term and therefore a service for which the Plan had established a benefit.

47.  With regard to "dental implants" specifically, the 2007 SPD states that these are not covered services "except where there is no other dental alternative." Exh. 4 at 60. There was "no other dental alternative" for replacing Plaintiff's shattered teeth and therefore her dental implants were not excluded from the Plan.

48.  Because multiple specific terms of the SPD provide for coverage of Plaintiff's

prosthetic teeth and all the services and equipment necessary to install those teeth, the Plan's denial of Plaintiff's request for preauthorization of these services, and subsequent denial of her appeal of that decision, were wrongful and an abuse of discretion. The Plan is obligated to pay benefits according to its terms and may not arbitrarily exclude Plaintiff's claim for benefits on the grounds that it is a "dental service."

49. The March 25, 2014 adverse determination on Plaintiff's appeal relies on a Summary Plan Description with an effective date of October 1, 2013. A true and correct copy of this SPD is attached hereto as Exhibit 5 and is referred to herein as the "2013 SPD."

50. The 2013 SPD contains nearly identical language to the 2007 SPD defining "Covered services" and "medically necessary" and providing for benefits for "Prostheses" and "cosmetic/reconstructive surgery" in the event of an accidental injury. Thus, Plaintiff's prosthetic teeth were covered under the 2013 SPD under the same rationale asserted in paragraphs 41-46, *supra*.

51. However, by its own terms the 2013 SPD only applies to "expenses incurred on or after October 1, 2013." The fixtures necessary to affix Plaintiff's crowns and abutments were installed on September 13, 2013, and thus were not subject to the 2013 SPD. Defendant relied on the 2013 SPD, and represented to Plaintiff that it governed her claim, despite knowing that the SPD did not apply to Plaintiff's claim.

52. The abutments and crowns were installed in 2014, however, these abutments and crowns became necessary as soon as Plaintiff's fixtures were implanted into her bone because installation of fixtures without a plan to subsequently install abutments and crowns is not a medical procedure that is ever offered or performed. Installation of only the fixtures would leave the patient with a number of useless and dangerous posts sticking out of her jawbone, a worse position than having no teeth at all, and is not a "medically necessary" procedure within the definition of that term set forth in either version of the SPD. Thus, the expenses associated with Plaintiff's crowns and abutments were incurred prior to October 1, 2013.

53. The 2013 SPD contains specific language regarding dental implants that does not

appear in the 2007 SPD.  This language states:  "Dental implants may be covered in cases of trauma, ablative surgery or congenital anomalies.  Prosthetic rehabilitation of dental implants including abutments and crowns are not covered under the medical benefit."

54. In denying Plaintiff's appeal, the Benefits/Appeals Committee stated that its decision was justified by the sentence "Prosthetic rehabilitation of dental implants including abutments and crowns are not covered under the medical benefit."

55. The Benefits/Appeals Committee did not explain how Plaintiff's crowns and abutments constituted "Prosthetic rehabilitation of dental implants including abutments and crowns."

56. "Prosthetic rehabilitation of dental implants including abutments and crowns" refers to rehabilitation of existing dental implants, existing abutments, and existing crowns. Rehabilitation of existing dental prostheses is covered under the dental benefit portion of the 2013 SPD.

57. The initial installation of Plaintiff's crowns and abutments did not constitute "prosthetic rehabilitation" and thus coverage for this service and equipment was not excludable from the medical benefit portion of the 2013 SPD even if the 2013 SPD did apply.  Therefore, Defendant's refusal to provide coverage for these services and equipment violated the terms of the Plan and Plaintiff's rights thereunder and was wrongful and an abuse of discretion.

58. As a direct and proximate result of the Plan's actions, Plaintiff has incurred substantial out-of-pocket costs to pay for medical services that should have been covered by the Plan.

59. As a direct and proximate result of the Plan's actions, Plaintiff has suffered other economic losses, including having to incur attorneys' fees to obtain the benefits provided by the Plan.

**FIRST CLAIM FOR RELIEF**
**[Claim for Benefits Pursuant to ERISA § 502(a)(1)(B) Against All Defendants]**

60. Plaintiff incorporates Paragraphs 1 through 58 as though fully set forth herein.

61. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

62. At all relevant times, under the terms of the Plan as set forth in the governing plan instruments, Plaintiff was entitled to health care benefits from the Plan for medical services necessitated by her injuries, including but not limited to for her oral reconstruction needs.

63. By denying Plaintiff's claim for benefits, and by doing so in a manner that violated section 503 of ERISA and the Secretary of Labor's regulations thereunder, and by related acts and omissions, Defendant has violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder. Defendant's refusal to pay Plaintiff benefits violates the terms of the Plan, and Defendant's actions in administering Plaintiff's claim and in denying benefits were wrongful and an abuse of discretion. At all material times herein, Defendant failed and refused to honor the terms of the Plan.

64. As a proximate result of Defendant's actions, Plaintiff has been deprived of health care benefits to which she was and is entitled and has suffered damages as set forth above. Plaintiff further seeks a declaration as to her entitlement to future health care benefits, as follows: an injunction prohibiting Defendant from again denying coverage for any medical services related to Plaintiff's need for oral surgery, reconstructive surgery, and initial installation of prosthetic teeth arising from her August 20, 2012 injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. Declare that Defendant violated the terms of the Plan by denying Plaintiff's claim for benefits;

B. Order that Defendant reimburse Plaintiff for her out-of-pocket expenses incurred to pay for covered medical services, with reasonable pre-judgment interest thereon;

C. Declare Plaintiff's right to receive future medical benefits under the terms of the Plan;

D. Issue an injunction requiring Defendant to approve future claims for benefits based on Plaintiff's need for oral reconstruction following her traumatic injuries;

E. Award Plaintiff attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

F. Provide such other relief as the Court deems equitable and just.

Respectfully submitted,

Dated: February 9, 2015                BOLT KEENLEY KIM LLP

By: /s/
James P. Keenley
Attorneys for Plaintiff