UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISE DRAGU,<br><br>          Plaintiff,<br><br>     v.<br><br>MOTION PICTURE INDUSTRY HEALTH PLAN FOR ACTIVE PARTICIPANTS,<br><br>          Defendant. | Case No. 14-cv-04268-RS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND COSTS** |

## I.     INTRODUCTION

Plaintiff Elise Dragu's attorney, James Keenley, helped his client significantly.  He pressed Dragu's claims and achieved enviable success.  As a result of Keeney's efforts, Dragu obtained all the relief she requested—a finding that defendant Motion Picture Industry Health Plan for Active Participants ("the Plan") had abused its discretion.  Keenley and members of his firm have devoted 215.9[1] hours to this case.  Keenley now seeks compensation for his efforts in the amount of $120,270 in fees and $661.34.  The Plan believes Keenley should not receive any compensation for his efforts, but will settle for a significant reduction in the total fees.

---

[1] At the time of filing, Keenley anticipated that his firm would devote 206.8 hours to this case in total. Pl.'s Mot. for Fees at 5.  That figure included 11.5 hours, which Keenley anticipated would be necessary to prepare a reply brief.  *Id.* at 4.  After completing the reply brief, Keenley filed a supplemental declaration, stating that he had spent 10.4 hours on the case since the prior submission, which is 0.9 hours less than he expected.

"Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Acknowledging that fact, Congress authorized courts to award "a reasonable attorney's fee and costs of action" to parties who have obtained "some degree of success on the merits" when asserting claims under the Employee Retirement Income and Security Act ("ERISA"). 29 U.S.C. § 1132(g); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). Keenley achieved more than "some degree of success" for his client; he was completely successful. He therefore deserves to be paid. Dragu's motion for attorney's fees is granted with some modifications. The Plan does not challenge the fees and costs Dragu seeks, and therefore that request is granted, as well.

## II.   FACTUAL AND PROCEDURAL HISTORY

Dragu mangled her jaw, mouth, teeth, and gums when she tumbled down a rocky creek while hiking in Northern California. She sought medical treatment for her various injuries from oral surgeon, Dr. Robert A. Shuken, D.D.S., who recommended extracting the damaged teeth, inserting bone grafts where possible, implanting fixtures for implantation of abutments and crowns, and—lastly—installing abutments and crowns as replacements for the missing teeth. Dragu requested coverage for the medical procedures, but the Plan denied her claim.

In September 2014, Dragu filed this lawsuit, advancing claims for violations of ERISA. The Plan responded by filing a successful motion to dismiss the complaint. After Dragu filed her first amended complaint, the Plan filed another motion to dismiss with less success. After the initial pleading stage, the Plan served numerous discovery requests and noticed Dragu's deposition. Dragu drafted and served her own requests aimed at identifying facts and documents to substantiate her position that the Plan's benefits determination should be reviewed de novo because of a conflict of interest. After serving discovery requests, however, the parties agreed to limit the scope of discovery.

In October 2015, Dragu and the Plan filed dueling motions for summary judgment. At the time of filing the motion for summary judgment, the Plan sought attorney's fees from Dragu. The

Plan's attorney submitted documentation establishing that her firm had devoted 163.0 hours to this case. After the hearing, Dragu's motion summary judgment was granted and the Plan's cross-motion was denied.

Shortly after summary judgment was entered, Keenley filed this motion for attorney's fees accompanied by a declaration and exhibits documenting the time he and his law partners spent on the case. Keenley's firm keeps contemporaneous records with the help of timekeeping software, Freshbooks. The Freshbooks records reveal that Keenley logged 170.95 hours preparing correspondence and motions, reviewing records, appearing in court, and preparing for the summary judgment hearing. Keenley Decl. Ex. 1. Since filing the motion for fees and costs, Keenley expended an additional 10.4 hours on this matter. Keenley Supp. Decl. Ex. 1. To date, Keenley's law firm has devoted 216.1 hours to this case.

Keenley's law partners, Brian Kim and Emily Bolt, helped Keenley review documents and discuss the case. Kim and Bolt have incurred 17.90 and 16.45 hours respectively in connection with this case. Keenley Decl. ¶ 7. Before filing this motion for fees, Keenley and his partners agreed to write off the time Kim and Bolt spent discussing this case, editing Keenley's briefs, and reviewing the documents. Keenley Decl. ¶ 8. In total, Keenley wishes to recover for 199.65 hours' work.

Keenley and his partners charge $600 per hour for their services. Local ERISA practitioners, Jeffrey Lewis, Daniel Feinberg, Glenn R. Kantor, Terrance Coleman, and Michelle Roberts, submitted declarations about the standard rates of attorneys representing ERISA plaintiffs. Each declarant is familiar with Keenley, Bolt, and Kim, and they all agree that the $600 hourly rate is reasonable and within market range for attorneys of Keenley's caliber. These attorneys charge hourly rates ranging from $500 to $900. Lewis Decl. ¶ 15; Feinberg Decl. ¶ 8; Kantor Decl. ¶ 14; Coleman ¶ 9; Roberts Decl. ¶ 11.

Using this hourly rate and timekeeping records, Keenley calculated the lodestar, which totals $120,270. In addition, he wishes to recover $666.39 for printing, postage, service fees, and filing fees. Keenley Decl. Ex. 2.

### III. DISCUSSION

**A. Are attorney's fees proper?**

Congress granted courts discretion to award attorney's fees and costs to ERISA litigants who achieved "'some degree of success on the merits.'" *Hardt*, 560 U.S. at 255 (quoting 29 U.S.C. § 1132(g)(1)). "[T]rivial success on the merits or a purely procedural victory" is not enough to qualify for fees under section 1132(g), but a court need not "conduct[] a lengthy inquiry into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id.* (internal alterations and quotation marks omitted). "[A] prevailing beneficiary in an ERISA action" should ordinarily receive reasonable "attorneys' fees and costs, absent special circumstances cautioning against it." *Boston Mut. Ins. v. Murphree*, 242 F.3d 899, 904 (9th Cir. 2001).

To assess whether an attorney's fee award is appropriate, courts consider five factors with any eye toward "protecting participants in employee benefit plans": "(1) the degree of the opposing parties' culpability or bad faith"; (2) the opposing party's ability to pay the award; "(3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all plan participants or resolve a significant legal question; and (5) the relative merits of the parties' positions." *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) (quoting *Hummell v. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980)).

"[B]ad faith is not required for an award of attorneys' fees" or to find a plan culpable. *Caplan v. CNA Fin. Corp.*, 573 F. Supp. 2d 1244, 1248 (N.D. Cal. 2008) (citing *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 590 (1984)). Here, the Plan is culpable because it interpreted the terms of the plan arbitrarily and capriciously in violation of ERISA. *See Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000) ("A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate." (internal quotation marks omitted)); *Caplan*, 573 F. Supp. 2d at 1248 ("[F]rom a legal perspective, Defendants are 'culpable' in that they were found to owe Plaintiff a legal duty that they were not fulfilling.").

Turning to the second *Hummell* factor, the Plan insists that its funds are better spent paying beneficiaries' claims than paying attorney's fees. That is surely correct, but always true in ERISA cases. To refuse to award fees on that basis alone would undermine the enforcement mechanism Congress created. The Plan has $421 million in net assets and thus is certainly capable of paying this fee request. Moreover, an award of attorney's fees may deter the Plan from arbitrarily and capriciously denying claims in the future. *See S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984) ("If defendant employers face the prospect of paying attorney's fees for successful plaintiffs, they will have added incentive to comply with ERISA."). Thus, the second and third factors also militate in favor of awarding attorney's fees.

Whether Dragu's efforts in this case will benefit other beneficiaries is difficult to determine on this record. The Plan dismisses that possibility. Dragu points out, however, that there are a number of cases addressing whether the terms of medical plans apply to certain dental procedures. *See Meredith v. Mamsi Ins. Res. Inc.*, 36 F. App'x 109 (table) (holding that there was a triable issue of fact as to whether the Endosseous implants were "dental implants" within the meaning of the health plan); *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461 (9th Cir. 1997) (holding that the plan abused its discretion by not engaging the beneficiary in a meaningful dialogue to determine whether the dental work she received was covered by a provision in the medical plan). At the very least, Dragu's efforts to obtain coverage has provided some clarity about the scope of the dental benefits available to the Plan's 56,362 participants.

Finally, despite the fact that many of Dragu's legal theories were unconvincing, "[t]he result is what matters," and she received everything she wanted out of this litigation. *Hensley*, 461 U.S. at 435. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* All in all, the *Hummell* factors indicate that Dragu "obtained excellent results," and her attorney "should recover a fully compensatory fee." *Id.*

**B. Are the requested attorney's fees reasonable?**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Notably, the Plan does not challenge the reasonableness of Keenley's fee. Keenley has presented numerous declarations from ERISA practitioners from the San Francisco Bay Area who attest to the experience and competence of the attorneys at Bolt Keenley Kim, LLP. All agree that the $600 hourly fee is reasonable in this market. Given the undisputed evidence, Keenley's $600 hourly rate is reasonable.

The next task is to determine whether the hours expended were reasonable. Courts must exclude time from the lodestar calculation when "the documentation of hours is inadequate," the hours "were not reasonably expended," cases are overstaffed, or the requesting attorney did not exercise sound billing judgment. *Id.* at 433-32 (internal quotation marks omitted). District courts are free to give fee requests "a haircut," but should keep in mind that "*some* degree of duplication is an inherent part of the [litigation] process." *Moreno*, 534 F.3d at 1112. Nevertheless, when trimming the fee application, the district court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.*

The Plan argues that 295.85 hours should be subtracted from any fee award—79.75 more hours than Keenley actually billed. It has objected to seven categories of time: (1) time spent litigating the motion to dismiss and drafting the first amended complaint; (2) "clerical or administrative" work; (3) time spent conferring with Bolt and Kim about substantive issues in the case; (4) "excessive" preparation time for the hearing on the motion for summary judgment; (5) "block" time entries; (6) "excessive" time spent reviewing records; and (7) allegedly duplicative billing. In addition, the Plan insists that the fee request is "grossly disproportional" to the total amount at issue.

Without reference to any authorities, the Plan argues that Dragu incurred 40.25 hours unnecessary hours litigating the motion to dismiss the complaint and drafting the first amended complaint, and that those hours should be excluded from the fee award. While those fees may

have been avoidable had the initial complaint been more specific, litigation often involves unsuccessful motions and arguments. "Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war." *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 884 (9th Cir. 2005) (internal quotation marks omitted). Plaintiffs' attorneys should be compensated for their efforts contributing to ultimate victory, and defining the claims more precisely was part of that effort here. Thus, Dragu is entitled to recover for the time Keenley expended opposing the Plan's successful motion to dismiss.

The Plan argues that Keenley's fee request should be reduced to exclude time spent performing "clerical or administrative tasks." "When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). In *Nadarajah*, the Ninth Circuit concluded that obtaining transcripts, tracking a package, and assembling documents were "clerical tasks" that law firms should absorb as part of overhead expenses.

Here, the Plan claims that reviewing notices from the court, preparing documents for service, and revising an opposition brief qualify as clerical and administrative tasks that should be excluded. Obviously, attorneys should review and edit their briefs before filing, and Keenley should be compensated for the 8.80 hours he devoted to that task. The remaining 2.35 hours do not engage an attorney's persuasion or analysis skills, but are certainly necessary to the effective practice of law. The court expects attorneys to review its notices and orders, and thus should spend compensable time on these matters. Keenley spent too much time on some of these tasks, however, such as hours spent reviewing the notice of declination of magistrate jurisdiction (0.20 hours). Accordingly, the court will trim these hours by 1.0 to account for some inefficiency.

The Plan has identified 16.30 hours billed for time Keenley spent consulting with his colleagues. Courts occasionally exclude time from fee applications for hours spent in intra-office conferences where the attorney had "assumed sole responsibility for several hundred ERISA matters." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007). However, collaboration and brainstorming are an important aspect of legal practice. Even the most

competent and experienced attorney does not have all the answers, and therefore attorneys should receive some compensation for consultations with colleagues.  Nevertheless, there are some matters for which a colleague's input is less helpful, such as discussing a defendant's decision to waive service (0.20 hours), the stipulation (0.10 hours), or the case management conference (0.40 and 0.20 hours).  Accordingly, the court will reduce the fee award by 0.90 hours.

The Plan accuses Keenley of "block billing" his time—the practice of lumping smaller discrete tasks together in a single time entry.  *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004).  Block billing makes the task of evaluating the reasonableness of the time spent, which means that the attorney has failed to carry his burden to prove his fees are reasonable.  *Welch*, 490 F.3d at 948.  That is not the case here.  Many of the entries the Plan has identified as block entries are not, in fact, examples of block billing; they are tasks which ordinarily take a great amount of time:  drafting motions, conducting legal research, and analyzing the administrative record.  Thus, it does not appear that Keenley has lumped together discrete tasks; he simply chose to devote large chunks of time to a single task.

In addition, the Plan complains that Keenley spent excessive time preparing for the hearings on the cross-motions for summary judgment (13.65 hours) and reviewing documents (53.55 hours).  Keenley's law firm has agreed to write off the time Bolt and Kim devoted to mooting Keenley in preparation for the hearing, Keenley Decl. ¶ 8, and therefore only 7.3 hours are actually at issue.  The Plan contends that Keenley spent more time than necessary to prepare for the case given his familiarity with the contested issues and facts.  The line between over- and under-preparation is difficult to police, and so the Ninth Circuit has cautioned against second-guessing a winning attorney's judgment about the time necessary to present a winning case.  *Moreno*, 534 F.3d at 1112.  Nevertheless, the Plan rightly points out that Keenley was intimately familiar with this record after spending time preparing and responding to the motions for summary judgment, and therefore did not need to devote so much additional time to prepare of the hearing.  Accordingly, the time spent mooting and preparing for the hearing will be reduced by 20%—1.45 hours.

Arguably, Keenley also spent slightly too much time reviewing briefs and the administrative record in this case. Parsing insurance documents and medical records is no easy task, however, and there is no reason to discourage attorneys from thoroughly reviewing the key documents. Indeed, the Plan's attorney devoted considerable time to reviewing records, as well. *See* Zinnen Decl. Ex. A. At the time the Plan filed the motion for summary judgment, the Plan's attorneys had devoted 163 hours to this case. In comparison, Dragu's counsel had expended 119.70 hours.[2] Keenley Decl. Ex. 3. Thus, the record establishes that both sides devoted considerable time and energy litigating this case—a fact that bolsters Dragu's contention that Keenley's hours are reasonable. Nevertheless, the 53.55 hours spent reviewing various documents will be reduced by 10%—5.35 hours—to account for some inefficiency.

The Plan also argues that there are 27.65 duplicative hours, which should be deducted from the total hours. Keenley and his partners have already omitted those duplicative entries (16.35 hours) from the application, and therefore there is no need to reduce the total hours again.

Finally, the Plan argues that Keenley's fee request should be reduced because the requested fees are not proportional to the total amount at issue, approximately $25,288.00. ERISA does not require that attorney's fee awards be proportional to the total recovery. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) ("[W]e also adopt the rule that in ERISA cases, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages."); *Operating Engineers Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1355 (9th Cir. 1990) (rejecting an invitation to adopt a "de minimus" rule to bar recovery when the amount at issue is small because "Congress saw fit to impose on trust funds a statutory and fiduciary duty to collect contributions that are owed under ERISA, and to mandate that the courts grant them attorney's fees whenever they prevail"). Accordingly, district courts routinely award attorney's fees in

---

[2] This figure does not take into consideration the time spent preparing Dragu's motion for summary judgment.

excess of the ERISA plaintiff's total recovery.  *See, e.g.*, *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1013 (8th Cir. 2004) (affirming the award of $96,448 in attorney's fees despite the "significant discrepancy" with the $1,680.94 recovery); *Peterson v. Fed. Express Corp. Long Term Disability Plan*, 525 F. Supp. 2d 1125 (D. Ariz. 2007) (awarding $123,000 in attorneys' fees even though the plaintiff recovered only $40,000).

That Dragu's fee request is 4.75 times the damages at issue in this case is not, by itself, a reason to reduce the award of attorney's fees.  Many of these fees could have been avoided with early resolution, but the Plan chose to proceed to judgment knowing that it may be subject ultimately to Keenley's fees.

In sum, the application for attorney's fees is reasonable.  For the reasons previously discussed, the total hours will be reduced by 8.70.  Keenley will be compensated for 190.95 hours' work at a rate of $600 per hour, resulting in a total award of $114,570 in fees.  The Plan did not contest the costs, and an independent review of the record confirms that the $666.39 sought is fair and reasonable.

### V.    CONCLUSION

Dragu's motion for fees, costs, and expenses is granted with some modifications.  The Plan shall pay Dragu $114,570 in attorney's fees and $666.39 in fees, costs, and expenses.

**IT IS SO ORDERED**.

Dated:  February 5, 2016

_____
RICHARD SEEBORG
United States District Judge